### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 24-00087-JB |
| | ) | |
| TYDERIAN DEANTWYNE SIMS | ) | |

### PLEA AGREEMENT

The defendant, **TYDERIAN DEANTWYNE SIMS**, represented by his counsel, and the United States of America have reached a plea agreement in this case, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the terms and conditions of which are as follows:

### RIGHTS OF THE DEFENDANT

1.    The defendant understands his rights as follows:

   a.    To be represented by an attorney;

   b.    To plead not guilty;

   c.    To have a trial by an impartial jury;

   d.    To confront and cross-examine witnesses and to call witnesses and produce other evidence in his defense; and

   e.    To not be compelled to incriminate himself.

### WAIVER OF RIGHTS AND PLEA OF GUILTY

2.    The defendant waives rights b through e, listed above, and pleads guilty to Counts One, Two, and Seven of the Indictment, charging violations of Title 18, United States Code, Sections 1040(a)(2) (fraud in connection with emergency benefits), 1343 (wire fraud), and 1344(1) (bank fraud), respectively.

1

3.  The defendant understands that the statements he makes under oath in the plea of guilty must be completely truthful and that he can be prosecuted for making false statements or perjury, or receive a perjury enhancement at sentencing, for any false statements he makes intentionally in this plea of guilty.

4.  The defendant expects the Court to rely upon his statements here and his response to any questions that he may be asked during the guilty plea hearing.

5.  The defendant is not under the influence of alcohol, drugs, or narcotics. He is certain that he is in full possession of his senses and is mentally competent to understand this Plea Agreement and the guilty plea hearing that will follow.

6.  The defendant has had the benefit of legal counsel in negotiating this Plea Agreement. He has discussed the facts of the case with his attorney, and his attorney has explained to the defendant the essential legal elements of the criminal charges that have been brought against him. The defendant's attorney has also explained to the defendant his understanding of the United States' evidence and the law as it relates to the facts of his offenses.

7.  The defendant understands that the United States has the burden of proving each of the legal elements of the criminal charges beyond a reasonable doubt. The defendant and his counsel have discussed possible defenses to the charges. The defendant believes that his attorney has represented him faithfully, skillfully, and diligently, and he is completely satisfied with the legal advice of his attorney.

8.  A separate document, entitled Factual Resume, will be submitted to the Court as evidence at the guilty plea hearing. The Factual Resume is incorporated by reference into this Plea Agreement. The defendant and the United States agree that

2

the Factual Resume is true and correct. Alterations to the Plea Agreement or Factual Resume initialed only by the defendant and his counsel are not part of this agreement and are not agreed to by the United States.

9. This plea of guilty is freely and voluntarily made and is not the result of force, threats, promises, or representations, apart from those representations set forth in this Plea Agreement. There have been no promises from anyone as to the particular sentence that the Court will impose. The defendant is pleading guilty because he is guilty.

10. The defendant also knowingly and voluntarily waives all rights, whether asserted directly or through a representative, to receive from the United States after sentencing any further records, reports, or documents pertaining to the investigation or prosecution of this matter. This waiver includes, but is not limited to, rights under the Freedom of Information Act and the Privacy Act of 1974.

## PENALTY

11. The maximum penalty the Court could impose as to Counts One of the Indictment is:

    a.    Thirty (30) years' imprisonment;

    b.    A fine not to exceed $250,000;

    c.    A term of supervised release of five (5) years, which would follow any term of imprisonment. If the defendant violates the conditions of supervised release, he could be imprisoned for the entire term of supervised release;

    d.    A mandatory special assessment of $100.00; and

    e.    Such restitution as may be ordered by the Court.

3

12.     The maximum penalty the Court could impose as to each of Counts Two and Seven of the Indictment is:

a.      Thirty (30) years' imprisonment;

b.      A fine not to exceed $1,000,000;

c.      A term of supervised release of five (5) years, which would follow any term of imprisonment. If the defendant violates the conditions of supervised release, he could be imprisoned for the entire term of supervised release;

d.      A mandatory special assessment of $100.00; and

e.      Such restitution as may be ordered by the Court.

## **SENTENCING**

13.     The Court will impose the sentence in this case. The United States Sentencing Guidelines are advisory and do not bind the Court. The defendant has reviewed the application of the Guidelines with his attorney and understands that no one can predict with certainty what the sentencing range will be in this case until after a pre-sentence investigation has been completed and the Court has ruled on the results of that investigation. The defendant understands that at sentencing, the Court may not necessarily sentence the defendant in accordance with the Guidelines. The defendant understands that he will not be allowed to withdraw his guilty plea if the advisory guideline range is higher than expected, or if the Court departs or varies from the advisory guideline range.

14.     The defendant understands that this Plea Agreement does not create any right to be sentenced in accordance with the Sentencing Guidelines, or below or within any particular guideline range, and fully understands that determination of the

4

sentencing range or guideline level, or the actual sentence imposed, is solely the discretion of the Court.

15.    The United States will provide all relevant sentencing information to the Probation Office for purposes of the pre-sentence investigation. Relevant sentencing information includes, but is not limited to, all facts and circumstances of this case and information concerning the defendant's conduct and background.

16.    Both the defendant and the United States are free to allocute fully at the time of sentencing.

17.    The defendant agrees to tender $300.00 to the U.S. District Court Clerk in satisfaction of the mandatory special assessment in this case. The United States reserves the right to withdraw any favorable recommendations it may agree to within this document if the defendant fails to pay the special assessment prior to or at the time of his sentencing.

## **RESTITUTION**

18.    Pursuant to 18 U.S.C. §§ 3556 and 3663A, restitution is mandatory. The defendant agrees to make full restitution in an amount to be determined by the Court at sentencing and as to all relevant conduct regardless of whether it relates to the counts of conviction.

## **FORFEITURE**

19.    The defendant agrees to forfeit to the United States any right, title, and interest in all assets subject to forfeiture under the notice of forfeiture contained in the charging document, including property specified in any bill of particulars and property previously seized by the government for administrative, civil, or criminal

forfeiture. The defendant further consents to the filing of a motion for a preliminary order forfeiting such property and any dollar amount specified in the notice of forfeiture or bill of particulars, and the defendant confesses the requisite nexus between the property and the charge of the conviction. The defendant hereby withdraws any petition for remission or claim for such property and further waives any right to contest or appeal the government's forfeiture proceedings for any reason, including on grounds that the forfeiture constitutes an unconstitutionally excessive fine or punishment, and in any manner, including by claim, petition, appeal or collateral attack.

## **FINANCIAL OBLIGATIONS**

20.     The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.

## **UNITED STATES' OBLIGATIONS**

21.     The United States will not bring any additional charges against the defendant related to the facts underlying the Indictment and will move to dismiss any remaining charges against the defendant once sentence is imposed in this case. This agreement is limited to the United States Attorney's Office for the Southern District

of Alabama and does not bind any other federal, state, or local prosecuting authorities.

22.    The United States will recommend to the Court that the defendant be sentenced at the low end of the advisory sentencing guideline range as determined by the Court.

**APPLICATION OF USSG § 5K1.1 AND/OR FED. R. CRIM. P. 35**

23.    The defendant understands and agrees that he has no right to cooperate, and that the decision whether to allow him to cooperate is reserved solely to the United States in the exercise of its discretion. If the United States agrees to allow the defendant to cooperate, and if the defendant agrees to cooperate, the following terms and conditions apply:

a.    The defendant shall fully, completely, and truthfully respond to all questions put to him by law enforcement authorities regarding the underlying facts of the offenses with which he is charged, as well as the underlying facts of any criminal offense(s), state or federal, of which he has information or knowledge.

b.    The defendant acknowledges that he understands that he shall provide truthful and complete information regarding any offense about which he has knowledge or information regardless of whether law enforcement authorities question him specifically about any such offense. This provision requires the defendant to divulge all information available to him even when law enforcement authorities do not know about the defendant's involvement, knowledge or information relating to any particular offense.

This requirement extends to any and all persons about whom the defendant has such knowledge or information.

c.   The defendant agrees to cooperate completely with all law enforcement authorities in any matters to which his cooperation may be deemed relevant by any law enforcement authority. The defendant agrees to fully comply with all instructions from law enforcement authorities regarding the specific assistance he shall provide. This includes, but is not limited to, consenting to monitored and/or recorded telephone conversations, participating in undercover operations, testifying completely and truthfully before any grand jury, at any pre-trial proceeding, during any trial, and any post-trial proceeding.

d.   If the United States deems it necessary, the defendant may be required to take a polygraph examination(s) which will be administered by a government polygrapher. The defendant agrees that the results of any polygraph examination may be used by the United States in its evaluation of whether there has been substantial assistance, and are admissible at sentencing to rebut an assertion by the defendant of bad faith or unconstitutional motive on the part of the United States.

e.   The defendant agrees to turn over to the United States any and all documents, tapes and other tangible objects which are in his possession or under his control and which are relevant to his participation in and knowledge of criminal activities, regardless of whether it relates to the charged offense. This obligation is a continuing one and includes materials

that the defendant may acquire, obtain or have access to after the execution of this agreement.

f.    The defendant also agrees to identify the assets of any other person which were obtained through or facilitated the defendant's illegal activities or the illegal activities of another.

g.    If the defendant provides full, complete, truthful and substantial cooperation to the United States, which results in substantial assistance to the United States in the investigation or prosecution of another criminal offense, a decision specifically reserved by the United States in the exercise of its sole discretion, then the United States agrees to move for a downward departure in accordance with Section 5K1.1 of the United States Sentencing Guidelines or Rule 35 of the Federal Rules of Criminal Procedure, whichever the United States deems applicable. The United States specifically reserves the right to make the decision relating to the extent of any such departure request made under this agreement based upon its evaluation of the nature and extent of the defendant's cooperation. The defendant understands that the United States will make no representation or promise with regard to the exact amount of reduction, if any, the United States might make in the event that it determines that the defendant has provided substantial assistance. The defendant understands that a mere interview with law enforcement authorities does not constitute substantial assistance. The defendant also understands that, should he provide untruthful information to the United States at any time, or fail to disclose

9

material facts to the United States at any time, or commits a new criminal offense, the United States will not make a motion for downward departure. If the defendant's effort to cooperate with the United States does not amount to substantial assistance as determined solely by the United States, the United States agrees to recommend that the defendant receive a sentence at the low end of the advisory guideline range.

h.      The United States and the defendant agree that any breach of this agreement by the defendant, including but not limited to committing a new offense, failing to cooperate, intentionally withholding information, giving false information, committing perjury, failing to identify assets obtained by him from his illegal activities or obtained by others associated with him or of which he has knowledge, refusing to take a polygraph examination, failing a polygraph examination, or refusing to testify before the grand jury or at any judicial proceeding, would:

(1)      permit the United States to reinstate and proceed with prosecution on any other charges arising from the matters underlying the Indictment; and

(2)      permit the United States to initiate and proceed with the prosecution on any other charges arising from a breach of this agreement. The United States will not be limited, in any respect, in the use it may make against the defendant of any information provided by the defendant during his breached cooperation. Such breach will constitute a waiver of any

claim the defendant could make under the United States Constitution, the Federal Rules of Evidence, the Federal Rules of Criminal Procedure, or any statute or case law by which the defendant seeks to suppress the use of such information or any evidence derived from such information.

i.   Nothing in this agreement shall protect the defendant in any way from prosecution for any offense committed after the date of this agreement, including perjury, false declaration, false statement, and obstruction of justice, should the defendant commit any of these offenses during his cooperation. The defendant acknowledges and agrees that the information that he discloses to the United States pursuant to this agreement may be used against him in any such prosecution.

j.   The United States and the defendant agree that the defendant will continue his cooperation even after he is sentenced in the instant matter. His failure to continue his cooperation will constitute a breach of this agreement, and the defendant agrees that under such conditions, the United States will be free to reinstate the charges and the prosecution of the charges in the Indictment, which are to be dismissed in accordance with this agreement. Under these circumstances, the defendant expressly waives any rights he may have under the statute of limitations and the speedy trial provisions.

## LIMITED WAIVER OF RIGHT TO APPEAL AND
## WAIVER OF COLLATERAL ATTACK

24.  As part of the bargained-for exchange represented in this plea agreement, and subject to the limited exceptions below, the defendant knowingly and voluntarily

11

waives the right to file any direct appeal or any collateral attack, including a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. Accordingly, the defendant will not challenge his guilty plea, conviction, or sentence in any district court or appellate court proceedings.

      a.    **EXCEPTIONS.** The defendant reserves the right to timely file a direct appeal challenging:

      (1)    any sentence imposed in excess of the statutory maximum;

      (2)    any sentence which constitutes an upward departure or variance from the advisory guideline range.

The defendant also reserves the right to claim ineffective assistance of counsel in a direct appeal or § 2255 motion.

25.    If the United States files a notice of appeal and such appeal is authorized by the Solicitor General, the defendant is released from the appellate waiver.

26.    The defendant further reserves the right to timely move the district court for an amended sentence under 18 U.S.C. § 3582 in the event of a future retroactive amendment to the Sentencing Guidelines which would affect the sentence.

27.    If the defendant receives a sentence within or below the advisory guideline range, this plea agreement shall serve as the defendant's express directive to defense counsel to timely file a "Notice of Non-Appeal" following sentencing, signed by the defendant.

## VIOLATION OF AGREEMENT

28.    The defendant understands that if he breaches any provision of this Plea Agreement, the United States will be free from any obligations imposed by this agreement, but all provisions of the agreement remain enforceable against the defendant. In the exercise of its discretion, the United States will be free to prosecute the defendant on any charges of which it has knowledge. In such event, the defendant agrees not to assert any objections to prosecution that he might have under the Sixth Amendment and/or Speedy Trial Act.

29.    In addition, if the defendant is released from detention prior to sentencing, he understands that the United States will no longer be bound by this agreement if he violates any condition of his release prior to sentencing or prior to serving his sentence after it is imposed.

## ENTIRETY OF AGREEMENT

30.    This document is the complete statement of the agreement between the defendant

and the United States and may not be altered unless done so in writing and signed

by all the parties.

Respectfully submitted,

SEAN P. COSTELLO
UNITED STATES ATTORNEY


Date: June 28, 2024                        _____

Justin D. Roller
Assistant United States Attorney


Date: July 3, 2024                         _____

Kasee S. Heisterhagen
Assistant United States Attorney
Deputy Chief, Criminal Division


14

I have consulted with my counsel and fully understand all my rights with respect to the offenses charged in the Indictment pending against me. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this agreement, and I voluntarily agree to it. I hereby stipulate that the Factual Resume, incorporated herein, is true and accurate in every respect, and that had the matter proceeded to trial, the United States could have proved the same beyond a reasonable doubt.

Date: 7/12/24

X _____
Tyderian DeAntwyne Sims
Defendant

I am the attorney for the defendant. I have fully explained his rights to him with respect to the offenses charged in the Indictment in this matter. I have carefully reviewed every part of this Plea Agreement with him. To my knowledge, his decision to enter into this agreement is an informed and voluntary one. I have carefully reviewed the Factual Resume, incorporated herein, with the defendant and to my knowledge, his decision to stipulate to the facts is an informed, intelligent and voluntary one.

Date: 7/12/24

_____
Fred W. Tiemann
Attorney for Defendant

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **CRIMINAL NO. 24-00087-JB** |
| | ) | |
| TYDERIAN DEANTWYNE SIMS | ) | |

## FACTUAL RESUME

The defendant, **TYDERIAN DEANTWYNE SIMS** ("SIMS"), admits the allegations of Counts One, Two, and Seven of the Indictment.

## ELEMENTS OF THE OFFENSE

**SIMS** understands that in order to prove a violation of Title 18, United States Code, Section 1040(a)(2), as charged in Count One of the Indictment, the United States must prove:

First:      The defendant knowingly made a materially false, fictitious, or fraudulent statement or representation;

Second:   The false, fictitious, or fraudulent statement or representation was made in connection with a "benefit," that is, a payment, money, or thing of value provided by the United States, a State or local government, or other entity that was authorized, transported, transmitted, transferred, disbursed, or paid in connection with a major emergency declaration under 42 U.S.C. § 5191; and

Fourth     The "benefit" was a payment, money, or thing of value of the United States, or of any department or agency thereof.

**SIMS** further understands that in order to prove a violation of Title 18, United States Code, Section 1343, as charged in Count Two of the Indictment, the United States must prove:

First:      The defendant knowingly devised or participated in a scheme to defraud someone by using false or fraudulent pretenses, representations, or promises;

Second:   The false pretenses, representations, or promises were about a material fact;

1

| Third: | The defendant acted with intent to defraud; and |
|---|---|
| Fourth: | The defendant transmitted or caused to be transmitted by wire some communication in interstate commerce to help carry out the scheme to defraud. |

**SIMS** further understands that in order to prove a violation of Title 18, United States Code, Section 1344(1), as charged in Count Seven of the Indictment, the United States must prove:

| First: | The defendant knowingly carried out or attempted to carry out a scheme to defraud a financial institution by using false or fraudulent pretenses, representations, or promises about a material fact |
|---|---|
| Second: | The false or fraudulent pretenses, representations, or promises were material; |
| Third: | The defendant intended to defraud the financial institution; and |
| Fourth: | The financial institution was federally insured. |

## **OFFENSE CONDUCT**

**SIMS** admits in open court and under oath that the following statement is true and correct and constitutes evidence in this case. This statement of facts is provided solely to assist the Court in determining whether a factual basis exists for **SIMS's** plea of guilty. The statement of facts does not contain each and every fact known to **SIMS** and to the United States concerning the defendant's involvement in the charges set forth in the plea agreement. All dates, times, amounts, and locations referenced below are approximations.

**Incorporation of Introduction of the Indictment**

**SIMS** admits that the allegations in the introductory paragraphs of the Indictment, that is, Paragraphs 1 through 16 of the Indictment, are correct. The acronyms and abbreviations referenced in the introductory paragraphs are incorporated by reference in this Factual Resume.

2

**Mar. 2021: SIMS obtains fraudulent pandemic unemployment benefits**

Between April 5, 2020, and April 3, 2021, **SIMS** made 33 unemployment claims and received a total of $15,263.00 in Alabama UI/pandemic unemployment benefits. The funds were deposited into **SIMS's** GWCU account (number x6893), which he opened in February 2020 using his Alabama driver's license, name, social security number, address in Atmore, Alabama, phone number, and email address.

For the week of March 14, 2021, to March 20, 2021, **SIMS** applied online for FPUC benefits via AL-DOL's online portal. In the application, **SIMS** provided his name, phone number, and email address. **SIMS** falsely certified under penalty of perjury that (a) did not work for pay during the week of March 14, 2021 to March 20, 2021; (b) did not receive any payments for work during the week of March 14, 2021 to March 20, 2021; and (c) was physically and mentally able to work and available to work if not for COVID-19 restrictions during the week of March 14, 2021 to March 20, 2021.

Based on his certification, for the week of March 14, 2021 to March 20, 2021, **SIMS** was paid $270.00 in FPUC benefits and $139.00 in regular UI benefits. This $409.00 was deposited to **SIMS's** GWCU account (number x6893) on March 24, 2021, and **SIMS** withdrew the funds in Atmore, Alabama on March 27, 2021. On March 26, 2021, however, **SIMS** also cashed a $400.75 check from a staffing company ("Company-1") via his GWCU account. The check's memo line read, "Pay Period: 03/15/2021–03/21/2021." Agents interviewed a representative of Company-1, who confirmed that the $400.75 check issued to **SIMS** was a legitimate and correct payroll check issued on March 26, 2021, which was a payday. The representative advised that **SIMS** worked one pay period, from March 15, 2021 through March 21, 2021 (*i.e.*, the same time **SIMS** had certified to AL-DOL that he was unemployed due to the COVID-19 pandemic). The representative

3

confirmed that **SIMS** had only received one check from Company-1, as reflected in **SIMS's** application documents, resume, and paystub.

**May 2021: SIMS obtains a fraudulent PPP loan, which is later fully forgiven**

On May 1, 2021, **SIMS** applied to SBA for a PPP loan of $20,284.00 funded by Benworth. In the application, **SIMS** provided his email address, cell phone number, and NFCU bank account information (number x4331). **SIMS** falsely claimed to be the owner and sole proprietor of a lawncare business that allegedly was established on January 1, 2019, and had gross income during Tax Year 2020 (*i.e.*, while **SIMS** was receiving UI benefits) of $97,365.00. **SIMS** attached a fraudulent Schedule C tax form to the application. A resume that **SIMS** had provided to Company-1 contains no reference to **SIMS** having ever owned, operated, or even worked at any type of lawncare company/sole proprietorship.

In the application, which **SIMS** electronically signed via DocuSign, **SIMS** certified that he was eligible for the PPP loan under the program's rules under penalty of perjury. Among other things, **SIMS** certified that "[t]he funds will be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures as specified under the Paycheck Protection Program Rules; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud."

In the application, **SIMS** provided "selfie" photos and a photo of his driver's license to verify his identity. **SIMS** signed an SBA promissory note via DocuSign on May 13, 2021.

As a result of **SIMS's** fraudulent application, which caused the transmission of interstate wire communications in furtherance of his fraud scheme, Benworth deposited $20,284.00 into

**SIMS's** NFCU account (number x4331) on May 19, 2021. Over the next two months, **SIMS** fully depleted the money via transfers and ATM withdrawals, many of which occurred in Atmore, Alabama.

On August 5, 2021, **SIMS** filed an application with SBA for full forgiveness of his fraudulent $20,284.00 PPP loan. In the forgiveness application, which **SIMS** again signed via DocuSign, **SIMS** certified under penalty of perjury that he had used the PPP funds on eligible expenses, including $12,182.00 purportedly spent on payroll costs. On August 25, 2021, based on **SIMS's** fraudulent representations, SBA fully forgave the $20,284.00 loan amount and $57.24 in interest.

**July 2023: SIMS deposits counterfeited and forged checks into his bank account**

In July 2023, **SIMS** committed a series of fraudulent check deposits into his NFCU account (number x7172), as described below.

On July 12, 2023, **SIMS** mobile deposited a counterfeited and forged check (number 16725) for $24,355.00 into his NFCU account (number x7172). The check was drawn on an Ameris account (number x2983) corresponding to a business in Woodstock, Georgia ("Company-2"). Agents interviewed the controller for Company-2, who advised agents that Company-2 had been a victim of mail theft on August 15, 2022, during which one of the business's checks had been stolen from the mail. Thereafter, many counterfeited and forged checks were written off of Company-2's bank account. Agents asked about the above-referenced check number 16725 and another check number 16735 referenced below. The controller advised that the checks were not authorized and were declined for payment via positive pay (which Company-2 instituted after the first round of counterfeited checks appeared). The representative confirmed that **SIMS** did not work for Company-2, which had never an employee by the name of "Tyderian Sims," had

5

never written an employee a check for compensation or injury, and that the business does not write checks for workman's compensation, but rather, uses a contractor. Company-2 had not had a workman's compensation claim against it since at least 2007.

On July 14, 2023, **SIMS** mobile deposited a counterfeited and forged cashier's check (serial number x3176) for $9,500.00 into his NFCU account (number x7172). The check was drawn on a JPMorgan account (number x1342) corresponding to a purported remitter "K.M." JPMorgan records reflect that the original check number x3176 was payable to another payee (not **SIMS**) for $5.00 (not $9,500.00).

On July 18, 2023, **SIMS** mobile deposited a counterfeited and forged cashier's check (serial number x3205) for $9,100.00 into his NFCU account (number x7172). The check was drawn on a JPMorgan account (number x1342) corresponding to a purported remitter "R.P." JPMorgan records reflect that the original check number x3205 was payable to "AT&T" (not **SIMS**) for $5.00 (not $9,100.00).

Finally, on July 20, 2023, **SIMS** mobile deposited a counterfeited and forged check (number 16735) for $40,684.19 into his NFCU account (number x7172). The check was drawn on an Ameris account (number x2983) corresponding to Company-2. **SIMS** withdrew illicit proceeds of the above-referenced fraudulent deposits via debit card transactions, ATM withdrawals, and Cash App transfers. NFCU's records included a recorded phone call that a male individual using **SIMS's** phone number made to NFCU on July 21, 2023, after the credit union flagged the above-referenced deposits. During the recorded call, the male caller identified himself using **SIMS's** name, admitted that he made the deposits, and claimed that they were legitimate. The male caller said the cashier's checks were payments he had received from his "uncle" as part of an inheritance. When the NFCU employee asked the caller for his uncle's name, the caller used the

name of one of the two remitters on the forged cashier's checks. When the employee pressed the caller to provide a last name, the caller could not immediately answer and later said, "K.M." (the name of the other remitter on the forged cashier's checks).

As for the fraudulent $40,684.19 Company-2 check, the caller claimed that the he had received the check as workman's compensation for an injury he purportedly had sustained while working at Company-2. As noted above, representatives of Company-2 confirmed that **SIMS** never worked for the business, let alone sustained an injury there. When the NFCU agent noted that the transactions were fraudulent and **SIMS** was responsible for them, the caller hung up. NFCU also provided surveillance video **SIMS** accessing the NFCU account (number x7172) at branches in Pensacola, Florida in June 2023.

**Admission of elements and sentencing agreements**

As part of his guilty plea in this case, **SIMS** admits that (1) he made materially false, fictious, and fraudulent statements and representations that he knew were false; (2) his false statements and representations were in connection with a "benefit," that is, pandemic unemployment benefit payments of $409.00 provided by the United States and the State of Alabama, that were authorized in connection with a major emergency declaration under 42 U.S.C. § 5191; and (3) the "benefit" was a payment provided by the United States. **SIMS** further admits that (1) he knowingly devised and participated in a scheme to defraud the United States, Benworth, and the SBA of money and property by using false and fraudulent pretenses, representations, and promises about a material fact; (2) he acted with intent to defraud; and (3) he transmitted and caused to be transmitted by wire some communication in interstate commerce to help carry out his scheme to defraud. Finally, **SIMS** further admits that (1) he knowingly carried out and attempted to carry out a scheme to defraud Ameris, JPMorgan, and NFCU by using false and fraudulent

pretenses, representations, and promises about a material fact; (2) the false and fraudulent pretenses, representations, and promises were material; (3) he intended to defraud the financial institutions; and (4) the financial institutions were federally insured by the FDIC and the NCUA.

The parties agree for sentencing purposes that **SIMS** should be held responsible for loss of more than $150,000 but less than $250,000. U.S.S.G. § 2B1.1(b)(1)(F). The parties further agree for sentencing purposes that **SIMS's** offense conduct involved the possession and use of authentication features. *Id.* § 2B1.1(b)(11)(A)(ii). Finally, **SIMS** acknowledges that he is subject to a money judgment of $31,877.83 that he obtained as a result of his crimes.

AGREED TO AND SIGNED.

Respectfully submitted,

SEAN P. COSTELLO
UNITED STATES ATTORNEY

Date: June 28, 2024

Justin D. Roller
Assistant United States Attorney

Date: July 3, 2024

Kasee S. Heisterhagen
Assistant United States Attorney
Deputy Chief, Criminal Division

Date: 7/12/24

Tyderian DeAntwyne Sims
Defendant

Date: 7/12/24

Fred W. Tiemann
Attorney for Defendant

8